JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOHEMIA AGUSTIANA, ISELA HERNANDEZ, and ANA MUNOZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>OVERHILL FARMS, INC. and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:09-cv-05726 FMC-JCx<br><br>ORDER REMANDING ACTION TO LOS ANGELES SUPERIOR COURT |

The matter is before the Court on Defendant's Motion to Dismiss Case or, in the Alternative, for Summary Judgment or Partial Summary Judgment (docket no. 6), filed on August 12, 2009, and Plaintiffs' Motion to Remand (docket no. 13), filed on August 31, 2009. The Court has read and considered the moving, opposing, and reply documents submitted in connection with these motions. The Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. The hearing scheduled for October 5, 2009, is removed from the Court's calendar. For the reasons and in the manner set forth below Plaintiffs' Motion to Remand (docket no. 13) is GRANTED, and this action is REMANDED to Los Angeles Superior Court.

///

## I. FACTUAL AND PROCEDURAL BACKGROUND

This putative class action arises out of a dispute over whether Defendant Overhill Farms failed to pay Plaintiffs, all of whom are non-exempt (hourly) production and quality control workers employed by Defendant in California from July 1, 2005 forward.

On July 1, 2009, Plaintiffs filed suit in Los Angeles Superior Court, asserting the following state-law claims against Defendant: (1) failure to pay minimum wage, (2) failure to furnish wage and hour statements, (3) waiting time penalties, (4) conversion, and (5) unfair business practices. With their Complaint, Plaintiffs allege that Defendant did not pay production workers "to perform work prior to the beginning and end of their shifts" and that Defendant "had a policy and practice of not paying Production Workers for all of the time worked when Production Workers were required to wait for . . . equipment to be repaired, even though the Production Workers were required to remain at the plant under the control of the employer during this time." Compl. §§ 12-14. In connection with their first cause of action (for failure to pay minimum wage for all hours worked),[1] Plaintiffs allege:

---

[1]The Section of the California Labor Code referenced by Plaintiffs in connection with this claim provides:
> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Lab. C. § 1194(a). Plaintiffs also reference California Wage Order No. 1-2001, which relates to the regulation of wages, hours and working conditions in the manufacturing industry, in connection with their first claim. Compl. ¶ 29.

> Defendants [sic] had a policy and practice of not paying employees minimum wage for all hours worked, including but not limited to: 1) not paying Plaintiffs and Class Members for time worked at the beginning of each shift; and 2) not paying Plaintiffs and Class Members for all hours worked when there were equipment breakdowns.

*Id.* § 32.

On August 5, 2009, Defendant filed Notice of Removal with this Court, asserting that the Court has original federal question jurisdiction over this action because Plaintiffs' claims are preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 185, in that they cannot be resolved without reference to the collective bargaining agreement ("CBA") that governs the terms and conditions of Plaintiffs' employment with Defendant. At removal, Defendant asserted that Plaintiffs were and are employed with Defendant pursuant to a CBA between Defendant and Local 770 of the United Food and Commercial Workers ("Union"), Not. of Removal ¶ 5(b), and that CBA:

> [G]overns the employment relationship between Plaintiffs and [Defendant]. Plaintiffs' Complaint specifically alleges a breach of the CBA in that [Defendant] failed to compensate Plaintiffs for all hours worked. There is no way for the Court to determine the hours worked by Plaintiffs, and the class they purport to represent, without reference to the parties' CBA.

*Id.* ¶ 5(c).[2]

On August 12, 2009, Defendant filed its Motion to Dismiss or, in the Alternative, for Summary Judgment or Partial Summary Judgment. Following

---

[2] The Court notes that the Complaint makes no reference to the existence of a CBA.

1  the parties' joint stipulation to continue the hearing date on Defendant's Motion,[3]
2  on August 31, 2009, Plaintiffs filed their Motion to Remand. The parties filed
3  their oppositions on September 14, 2009, and they filed their replies on
4  September 21, 2009.

5  Plaintiffs' Motion to Remand, which the parties have agreed should be
6  decided first, argues for remand on the ground that Defendant has not, and
7  cannot, establish that Plaintiffs' claims are preempted by the LMRA.

## II. APPLICABLE LEGAL STANDARD

Ordinarily, a defendant may remove a suit to federal court only if the suit could have been brought there originally. 28 U.S.C. §1441(a) (1988). A defendant has the burden of proving that the requisite jurisdiction exists to support removal. *Gaus v. Miles , Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

A motion to remand is the proper procedure for challenging removal. *See N. Cal. Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir. 1995). The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *See Gaus*, 980 F.2d at 566; *see also Prize Frize, Inc. v. Matrix , Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999). Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *See Gaus*, 980 F.2d at 566; *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

Under the well-pleaded complaint rule, "federal-question jurisdiction only

---

[3]The parties stipulated that "[b]ecause the issue of jurisdiction should be settled before the court rules on a motion to dismiss, there is good cause here to continue the motion to dismiss and schedule it for the same date as the motion for remand. Stip. to Continue Sept. 14, 2009 Hr'g at 2.

exists when a federal question is presented on the face of the plaintiff's complaint." *Caterpillar v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987). However, the "complete preemption" doctrine is an exception to the well-pleaded complaint rule. *Id.* at 393; *Whitman v. Raley's, Inc.*, 886 F.2d 1177, 1180-81 (9th Cir. 1989). Under the complete preemption doctrine, the preemptive power of federal law may be so extraordinary that it transforms a state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. *Id.* "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered a federal claim from its inception, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393-94 (quoting *Metropolitan Life Insurance Co., v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547 (1987)).

### III. DISCUSSION

Plaintiffs contend that remand is appropriate in this case because Defendant has not, and cannot, establish that Plaintiffs' claims are preempted by the LMRA. Opposing Plaintiff's Motion, Defendant argues that "California has no statutory provision defining statutory work time, and determining Plaintiffs' compensable work time depends upon the interpretation of several provisions of the parties' [CBA]." Opp'n at 1. Defendant also maintains that Plaintiffs' claims are not, in fact, "simple claims for minimum wage, which are based entirely on state law and have nothing to do with the parties' CBA." *Id.* at 2. Rather, it is Defendant's position that Plaintiffs' claims "*arise directly out of* a *specific provision* of the CBA that Plaintiffs now impliedly contend is unlawful." *Id.* (emphasis added). In support of this argument, Defendant references and quotes from various provisions in the CBA. Opp'n at 4, 6-7. For example, Defendant quotes the following provision in support of the otherwise-unsupported conclusion that

5

1  "[t]hus, there is no way to determine when Plaintiffs were working and what
2  [Defendant]'s practices were with respect to work time, without interpreting the
3  CBA, which incorporates the parties' past practices":

> All conditions of employment relating to wages, hours of
> work, overtime, and general working conditions shall be maintained
> at not less than the highest standards in effect at the time of the
> signing of this Agreement.

Opp'n at 4 (quoting CBA § X(A)).  Similarly, Defendant also argues that a consideration of Plaintiffs' claims requires an interpretation of CBA provisions: (a) stating that, in the event of an equipment breakdown, "the waiting time shall be without pay for an aggregate of not more than one (1) hour over a calendar month. . ."; (b) addressing five minute periods allocated for hand washing or changing clothes; and (c) providing for compensation for wait time that occurs after an employee's scheduled work time if the employee arrives for work on time and clocks in at the scheduled start time,  *Id.* at 6-7 (quoting CBA §§ XI(I), XI(E), XIII(B), XI(F) & (H)).

Section 301 of the LMRA has a strong preclusive effect on state law claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394; *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985);*Franchise Tax Bd.*, 463 U.S. at 24.  The Supreme Court has noted that the Congressional intent underlying the enactment of section 301 was to "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Division of Magic Chief, Inc.*, 486 U.S. 399, 404, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1998).

To ensure uniform interpretation, the Supreme Court defined the scope of section 301's preemptive effect, holding that section 301 preempts state law contract claims brought by a plaintiff who is a member of a union and whose employment is covered by the terms and conditions set forth in a collective bargaining agreement. *Id.*, 486 U.S. at 403-04; *see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853-54, 77 L.Ed.2d 420 (1983). As the Ninth Circuit has explained:

> Section 301 of the LMRA provides that all suits seeking relief for violation of a CBA may be brought in federal court. The Supreme Court has held in a variety of contexts that § 301 acts to preempt state law claims that substantially depend on the CBA, that are premised on negotiable or waivable state law duties the content of which has been covered by the CBA, or that seek to enforce the terms of the CBA, for example, breach of contract claims. Section 301 preemption has been applied to generate and protect a body of consistent federal law interpreting CBA provisions, and to prevent plaintiffs from using state law litigation to side-step or alter the balance of the negotiated provisions of a CBA and the arbitration provisions contained therein. However, the Supreme Court has repeatedly admonished that § 301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship; § 301 has not become a "mighty oak" that might supply cover to employers from all substantive aspects of state law

*Humble v. Boeing Co.*, 305 F.3d 1004, 1007 (9th Cir. 2002) (footnotes omitted).

When resolving a state-law cause of action will require interpretation of the terms of a CBA because the action and the CBA are "inextricably intertwined,"

7

Section 301 will have preemptive effect. *Allis-Chalmers*, 471 U.S. at 213; *Madison v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1251 (C.D. Cal. 2000). However, claims will not be preempted simply because the CBA offers parallel protection of a worker's rights. *Miller v. AT&T Network Systems*, 850 F.2d 543, 546 (9th Cir. 1988). " '[N]onnegotiabele state-law rights...independent of any right established by contract' " are not preempted, nor are claims in which state law establishes "a criterion for deciding the case that permits application of state law without reference to the terms of the CBA." *Id.* at 546-47 (quoting *Allis-Chalmers*, 471 U.S. at 213); *see also Humble*, 305 F.3d at 1008 ("To balance properly the policy considerations . . ., defensive reliance on the terms of the CBA, mere consultation of the CBA's terms, or a speculative reliance on the CBA will not suffice to preempt a state law claim."); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1001 (9th Cir. 1987) (explaining that "a claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship").

Thus, to determine whether § 301 of the LMRA preempts a state law claim, a court must consider:

> (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is "yes," and the answer to either the second or third is "no."

8

*Miller*, 850 F.2d at 548.

Here, the answer to the first of the above questions is "no." Defendant's argument is concentrated on Plaintiffs' minimum wage claim. It is clear that Defendant has not satisfied its burden of proving that the requisite jurisdiction exists to support removal because it has not shown that Plaintiffs' minimum wage claim, nor any of their other state law claims, are preempted by the LMRA. First, it is clear that Plaintiffs' minimum wage claim was not created by the CBA. Simply put, Plaintiffs do not seek to enforce the terms of the CBA; rather, they seek to enforce state laws regarding the payment of wages to non-exempt workers. Plaintiffs allege that, in violation of state law which requires that workers be paid at least minimum wage for their work, they were not paid minimum wage for all hours worked. *See Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 324 (2005) ("California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked."). Second, resolution of Plaintiffs' claims that they were not paid the minimum wage for all hours worked is not "substantially dependent" on the interpretation of the CBA. The crux of Plaintiffs' claims is that they were not paid for certain blocks of time. Other than the single reference to the fact that the first hour of wait time related to an equipment breakdown in a given month will not be paid, nothing in the CBA provisions referenced by Defendant makes even an indirect reference to pay.[4]

---

[4]In *Lingle*, the Supreme Court explained:
A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand.

9

The Court is not persuaded that interpretation of the CBA provision about payment for wait time during equipment breakdowns is required in order resolve Plaintiffs' claims, but even it if were, Defendant's argument would fail because "section 301 does not grant the parties to a collective-bargaining agreement the ability to bargain for what is illegal under state law, only state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted." *Miller*, 850 F.2d at 547 (internal quotations and citations omitted). Accordingly, the question of whether Plaintiffs worked without pay in violation of state law is a question that may be answered without recourse to the CBA.

Finally, Plaintiffs contend that they are entitled to attorney fees pursuant to 28 U.S.C. § 1447(C). However, unless there are unusual circumstances, "attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005)). Here, the complexity of the jurisdiction issues involved in the instant case makes it clear that Defendant's removal was not wholly improper or unreasonable; thus, there is no basis for an award of attorney fees.

///

---

> Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted. As we said in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. at 211, "not every dispute . . . tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . ."

*Id.* (internal citation omitted).

## V.  CONCLUSION

Therefore, Plaintiffs' Motion to Remand (docket no. 13) is GRANTED, and this action is REMANDED to Los Angeles Superior Court.  Plaintiffs' request for attorney fees is DENIED.  Defendant's Motion to Dismiss Case or, in the Alternative, for Summary Judgment or Partial Summary Judgment (docket no. 6) is DENIED AS MOOT.

**IT IS SO ORDERED.**

Dated: September 25, 2009

_____
FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT